*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAMIA COOPER and KYLE PATTEN,

        Plaintiffs-Appellants,

v

ST. JOHN HOSPITAL, also known as ASCENSION
ST. JOHN HOSPITAL, RACHEL MCLAURIN
MATTHEWS, M.D., and FELICIA JADE
DROUILLARD, M.D.,

        Defendants-Appellees,

and

JAMES E. DENIER, M.D.,

        Defendant.

UNPUBLISHED
April 15, 2026
9:33 AM

No. 373583
Wayne Circuit Court
LC No. 21-000161-NH

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

This matter arises from an action asserting claims of medical malpractice and breach of contract. Plaintiffs appeal as of right from the trial court's order dismissing their action. On appeal, plaintiffs contest only the trial court's prior order granting partial summary disposition in favor of defendants on the breach of contract claims. The medical malpractice claims are not before this Court. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On September 14, 2019, plaintiff Damia Cooper presented to the emergency department at Ascension St. John Hospital with lower abdominal pain and body aches. Evaluation revealed an intrauterine pregnancy, and an ultrasound was performed. Dr. James Denier's ultrasound report indicated Cooper was approximately five weeks pregnant, with the gestational sac appearing high and to the left, consistent with an interstitial ectopic gestation located in the portion of the fallopian

tube traversing the myometrium. Consultation notes by Dr. Felicia Jade Drouillard confirmed imaging findings of an ectopic pregnancy in the left interstitial segment. Dr. Drouillard documented a discussion with Cooper outlining both medical and surgical management options, including associated risks and benefits. Cooper elected to proceed with medical management using methotrexate. The attending OB/GYN, defendant Dr. Rachel Matthews, concurred with this assessment and management plan.

Cooper executed a General Consent to Treatment form, which stated that she acknowledged the inherent uncertainties of medical and surgical practice and that no guarantees were made regarding the outcomes of diagnostic procedures or treatments. Cooper's affidavit asserts that she signed this form upon initial presentation to the emergency department, prior to any interaction with physicians or other medical staff. She further contends that she was not provided the complete form and was only informed that it signified her consent to receive treatment at the hospital.

After being notified of her pregnancy, Cooper contacted plaintiff Kyle Patten, the child's father, who indicated he would promptly come to the hospital. Prior to Patten's arrival, Cooper was advised by a physician that she had an ectopic pregnancy necessitating immediate termination due to life-threatening maternal risk. Upon Patten's arrival, both plaintiffs received the same information. When Cooper and Patten requested a second opinion or additional time for consideration, they were told the diagnosis and treatment plan were unequivocal and required urgent intervention. Plaintiffs acquiesced, and methotrexate was administered without delay.

At a subsequent hospital visit, Cooper was informed that the initial diagnosis of ectopic pregnancy was erroneous. She was advised that the fetus was unlikely to survive the prior methotrexate exposure and, if viable, would be at significant risk for congenital anomalies. Cooper obtained a second opinion at another hospital, where repeat ultrasonography demonstrated a normal intrauterine pregnancy. Despite Cooper's efforts to preserve the pregnancy, fetal demise occurred in November 2019.

Plaintiffs initiated litigation asserting claims of medical malpractice and breach of contract. As the present appeal is limited to the contract claims, discussion is confined accordingly. In Count 4, plaintiffs alleged that defendants entered into an express or implied contract by undertaking Cooper's medical care and breached said contract by: failing to accurately diagnose Cooper's condition(s); failing to perform appropriate follow-up or corroborative studies for diagnostic confirmation; failing to accurately communicate the degree of diagnostic certainty regarding ectopic pregnancy; and failing to appropriately convey the urgency of pregnancy termination. Plaintiffs contend that these breaches resulted in the unnecessary loss of their child and caused significant emotional distress and mental anguish. Count 5 further asserted that Patten was a third-party beneficiary of Cooper's contract with defendants.

The trial court granted summary disposition in favor of defendants on plaintiffs' contract claims because there was no written contract as required by MCL 566.132(1)(g) for medical treatment. The remaining claims against defendants were later dismissed by stipulation of the parties. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

Summary disposition may be granted under MCR 2.116(C)(7) if "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different forum, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action." "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence," and the "contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden*, 461 Mich at 119.

Summary disposition is warranted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). The trial court must consider the parties' evidence in the light most favorable to the opposing party to determine whether "the record leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiffs contend that the trial court erred in granting summary disposition on their contract claims, asserting that the court improperly relied on the statute of frauds, MCL 566.132(1)(g), to dismiss these claims.

In the context of medical treatment, a cause of action for breach of contract is "entirely separate" from an action for malpractice even though both claims may arise out of the same transaction. *Stewart v Rudner*, 349 Mich 459, 468; 84 NW2d 816 (1957) (quotation marks and citation omitted). As the Court observed:

> The two causes of action are dissimilar as to theory, proof and damages recoverable. Malpractice is predicated upon the failure to exercise requisite medical skill and is tortious in nature. *The action in contract is based upon a failure to perform a special agreement*. Negligence, the basis of the one, is foreign to the other. The damages recoverable in malpractice are for personal injuries, including the pain and suffering which naturally flow from the tortious act. In the contract action they are restricted to the payments made and to the expenditures for nurses and medicines or other damages that flow from the breach thereof. [*Id*. (quotation marks and citation omitted; emphasis added).]

It is the contract theory that is solely at issue in the present case. In *Stewart*, the plaintiff and her husband consulted a physician and specifically requested that the plaintiff's baby be delivered by Caesarean section based on concerns arising from the plaintiff's previous pregnancies. *Id*. at 460-461. The Court determined that there was "no doubt that such a contract

was made." *Id*. at 461. However, when it came time to deliver the baby, the physician did not ensure that a Caesarean section was performed. *Id*. at 463-464. The plaintiff delivered a stillborn baby even though a fetal heartbeat had been detected the previous day. *Id*. Our Supreme Court held that the contract was enforceable. *Id*. at 476. The Court reasoned:

> A doctor and his patient, of course, have the same general liberty to contract with respect to their relationship as other parties entering into consensual relationship with one another, and a breach thereof will give rise to a cause of action. It is proper to note, with respect to the contracts of physicians, that certain qualitative differences should be observed, since the doctor's therapeutic reassurance that his patient will be all right, not to worry, must not be converted into a binding promise by the disappointed or quarrelsome. Those qualifications we have in mind as we proceed. [*Id*. at 467-468.]

This Court subsequently explained in *Penner v Seaway Hosp*, 169 Mich App 502, 508-510; 427 NW2d 584 (1988), that the "special agreement" that gives rise to a contract claim under *Stewart* in the context of providing medical treatment requires a "contract to perform a specific act," such as the express agreement that the physician in *Stewart* made to perform a Caesarean section. The *Penner* Court distinguished this type of "special agreement" from a mere agreement to provide appropriate or adequate professional medical care; in the second instance, a failure could only provide the basis for a *malpractice* claim but not a contract claim. *Id*.

In *Penner*, the plaintiff brought a breach of contract claim against the defendant hospital based on the defendant's alleged failure to properly diagnose the plaintiff's decedent. *Id*. At 509-510. This Court held that the plaintiff's claim sounded in malpractice, not contract:

> In this case, plaintiff's first amended complaint alleged that defendant breached the alleged agreement by failing to properly diagnose the decedent's ailments and render appropriate medical care. In addition, plaintiff alleged that the decedent received no medical care during his last four days at the hospital. After examining the allegations in plaintiff's complaint, we conclude that the allegations are an attempt to disguise a tort action sounding in malpractice into a contract action so as to avoid governmental immunity. Plaintiff's complaint does not allege the existence of a "special agreement" between the decedent and the hospital. The "Authorization For Treatment" form signed by the decedent merely authorized the hospital and its doctors to render appropriate medical care. Their failure to do so constitutes malpractice. This case is unlike *Stewart*, *supra*, wherein the defendant doctor specifically agreed to perform a Caesarean section. In our case, there was no agreement to perform any specific act. In fact, the only acts that the decedent agreed to allow the hospital to perform were those that were deemed necessary or advisable in the professional judgment of the attending physician. Thus, plaintiff has not established a contract cause of action. [*Id*.]

Additionally, the *Penner* Court held that there could not be an implied contract because the defendant already had a statutorily prescribed preexisting duty to provide appropriate medical services to all persons regardless of ability to pay, which meant that there could be no finding of

-4-

the consideration necessary to form a contract with the decedent. *Id*. at 510-511. This Court in *Penner* also concluded that the plaintiff could not sustain the contract claim because there was no writing as required to satisfy the statute of frauds. *Id*. at 511. The Court further reasoned, that the " 'Authorization for Treatment' form [did] not constitute a contract" because "[a]t best, it granted authority to the hospital to perform the requisite medical services." *Id*.

Finally, the statute of frauds, MCL 566.132, provides in relevant part as follows:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:

> \* \* \*

> (g) An agreement, promise, contract, or warranty of cure relating to medical care or treatment. This subdivision does not affect the right to sue for malpractice or negligence.

This Court has held that this statute "requires a writing for any agreement, promise or contract relating to medical care or treatment as well as any warranty of cure." *Powers v Peoples Community Hosp Auth*, 183 Mich App 550, 554; 455 NW2d 371 (1990).

A review of plaintiffs' complaint demonstrates that the gravamen of their claim is that defendants breached an alleged contract to provide Cooper with an accurate diagnosis and appropriate medical treatment. Such allegations, however, sound exclusively in medical malpractice rather than in contract. See *Penner*, 169 Mich App at 508-510. Furthermore, because the alleged agreement pertained to medical care or treatment, the statute of frauds mandates a written contract. See *Powers*, 183 Mich App at 554. Plaintiffs concede the absence of a written agreement; consequently, any purported oral contract is void. *Id*.; MCL 566.132(1)(g). The consent form executed in this case does not constitute a contract for these purposes, nor can an implied contract arise under these circumstances. See *Penner*, 169 Mich App at 510-511. Plaintiffs have therefore failed to establish that the trial court erred in granting summary disposition to defendants on the contract claims.

Affirmed. Defendants having prevailed in full are entitled to costs. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle

-5-